## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| SCOTT BROCKLESBY, JUSTIN MAHARATH, JAMES JUBB, SCOTT FREDERICK, ROBERT FARROW, DONNA DIVENUTI, DAVID PASTERNAK, ANTHONY MASONE, SCOT RODMAN, TIMOTHY DUFFY, and VADIM IABLONOVSKI, on behalf of themselves and all others similarly situated, Plaintiffs, <br><br> v. <br><br> MUZI MOTORS, INC., NEAL CAMMARANO, GLEN CAMMARANNO, and DALE SINESI, Defendants. |

## <u>CLASS ACTION COMPLAINT</u>

SCOTT BROCKLESBY ("Mr. Brocklesby"), JUSTIN MAHARATH ("Mr. Maharath"), JAMES JUBB ("Mr. Jubb"), SCOTT FREDERICK ("Mr. Frederick"), ROBERT FARROW ("Mr. Farrow"), DONNA DIVENUTI ("Ms. Divenuti"), DAVID PASTERNAK ("Mr. Pasternak"), ANTHONY MASONE ("Mr. Masone"), SCOT RODMAN ("Mr. Rodman"), TIMOTHY DUFFY ("Mr. Duffy"), and VADIM IABLONOVSKI ("Mr. Iablonovski") (Messrs. Brocklesby, Maharath, Jubb, Frederick, Farrow, Pasternak, Masone, Rodman, Duffy, and Iablonovski and Ms. Divenuti collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against MUZI MOTORS, INC. ("MMI"), NEAL CAMMARANO ("Mr. N. Cammarano), GLEN CAMMARANO ("Mr. G. Cammarano"), and DALE SINESI ("Ms. Sinesi") (MMI, Messrs. Cammarano, and Ms. Sinesi collectively, "Defendants"), showing in support as follows:

## NATURE OF THE CASE

1.     This is a civil action brought by Plaintiffs for Defendants' (i) failure to provide at least sixty (60) days' advance notice to them and putative class members ("Class Members") before Defendants' closing and/or conducting a mass layoff pursuant to 29 U.S.C. § 2101, *et seq.*, the Worker Adjustment and Retraining Notification Act ("WARN Act"); (ii) failure to pay them and Class Members all earned paid time off ("PTO") on the dates of their termination pursuant to Mass. Gen. Laws ch. 149, §§ 148, 150 ("Wage Act"), and (iii) violations of Mass. Gen. Laws ch. 109A, § 1, *et seq.*, the Uniform Fraudulent Transfer Act ("UFTA").

2.     Plaintiffs file this civil action as a class action pursuant to Fed. R. Civ. P. 23 ("R23").

3.     Defendants failed to (i) provide at least sixty (60) days' advance notice to Plaintiffs and Class Members before Defendants' closing and/or conducting a mass layoff pursuant to the WARN Act and (ii) pay Plaintiffs and Class Members all earned PTO owed under the Wage Act and (iii) MMI fraudulently transferred proceeds from its liquidation to Messrs. Cammarano and Ms. Sinesi in violation of the UFTA.

4.     Defendants' failure to (i) provide at least sixty (60) days' advance notice to Plaintiffs and Class Members before Defendants' closing and/or conducting a mass layoff pursuant to the WARN Act resulted in violations of the WARN Act and (ii) timely pay all earned PTO owed under the Wage Act resulted in violations of the Wage Act and (iii) MMI's fraudulent transfer of proceeds from its liquidation to Messrs. Cammarano and Ms. Sinesi resulted in violations of the UFTA.  Plaintiffs file their claims as a class action pursuant to R23.  The relevant time period for the WARN Act and Wage Act claims is three (3) years preceding the date this civil action was filed and forward and the relevant time

period for the UFTA claim is four (4) years preceding the date this civil action was filed and forward.

5.       The potential class is so numerous as to make joinder of all Class Members impracticable.  Plaintiffs do not know the exact size of the class since such information is in the exclusive control of the Defendants.  On information and belief, however, the number of potential class members is estimated to be in excess of fifty (50) individuals.

6.       The scope of the Class Members' claims in this civil action is limited to individuals who worked for Defendants in the Commonwealth for the time period of three (3) years preceding the date this civil action was filed and forward in relation to the WARN Act and Wage Act claims and for the time period of four (4) years preceding the date this civil action was filed and forward in relation to the UFTA claim.

7.       Plaintiffs and Class Members seek (i) all damages available under the WARN Act, including sixty (60) days' back pay and benefits, attorneys' fees, pre-judgment interest, and post-judgment interest for Defendants' violations of the WARN Act; (ii) all damages available under the Wage Act, including treble damages, as liquidated damages, reasonable attorneys' fees, costs, pre-judgment interest, post-judgment interest, and injunctive relief for Defendants' violations of the Wage Act, and (iii) all remedies available under the UFTA for Defendants violations of the UFTA.  These employees are similarly situated under the class action provisions of R23.

## **PARTIES**

8.       Mr. Brocklesby is an adult natural person who resides in Plymouth, Massachusetts.

9.       Mr. Brocklesby worked as an F&I Manager for Defendants from on or about August 15, 2021 to on or about November 30, 2021.

10.     Mr. Maharath is an adult natural person who resides in Melrose, Massachusetts.

11.     Mr. Maharath worked as a Salesperson and/or Sales Manager for Defendants from in or about April 2010 to in or about April 2020, in or about August 2020 to in or about September 2020, and in or about June 2021 to on or about November 8, 2021.

12.     Mr. Jubb is an adult natural person who resides in Millis, Massachusetts.

13.     Mr. Jubb worked as a Salesperson for Defendants from on or about October 13, 2020 to on or about November 5, 2021.

14.     Mr. Frederick is an adult natural person who resides in Leominster, Massachusetts.

15.     Mr. Frederick worked as a Sales Manager for Defendants from on or about December 20, 2019 to on or about November 30, 2021.

16.     Mr. Farrow is an adult natural person who resides in Franklin, Massachusetts.

17.     Mr. Farrow worked as a QuickLane Manager for Defendants from in or about 2016 to on or about November 7, 2021.

18.     Ms. Divenuti is an adult natural person who resides in Revere, Massachusetts.

19.     Ms. Divenuti worked as a Body Shop Manager for Defendants from in or about June 201 to on or about December 13, 2021.

20.     Mr. Pasternak is an adult natural person who resides in Somerset, Massachusetts.

21.     Mr. Pasternak worked as a Service Director for Defendants from in or about March 2020 to on or about November 30, 2021.

22.     Mr. Masone is an adult natural person who resides in Whitman, Massachusetts.

23.     Mr. Masone worked as a salesperson for Defendants from on or about January 7, 2013 to on or about November 5, 2021.

24.     Mr. Rodman is an adult natural person who resides in Foxborough, Massachusetts.

25.     Mr. Rodman worked as a salesperson for Defendants from in or about 2010 to on or about November 4, 2021.

26.     Mr. Duffy is an adult natural person who resides in North Easton, Massachusetts.

27.     Mr. Duffy worked as a Sales Manager for Defendants from on or about February 6, 2006 to on or about November 30, 2021.

28.     Mr. Iablonovski is an adult natural person who resides in Mansfield, Massachusetts.

29.     Mr. Iablonovski worked as a salesperson for Defendants from on or about June 21, 2004 to on or about November 5, 2021.

30.     Plaintiffs and putative Class Members are former employees of Defendants.

31.     The Class Members are former employees of Defendants who worked for Defendants in the Commonwealth and were not (i) provided at least sixty (60) days' advance notice to Plaintiffs and Class Members before Defendants' closing and/or conducting a mass layoff pursuant to the WARN Act and (ii) paid all wages owed pursuant to Commonwealth law as a result of Defendants' failure to pay them earned PTO on the dates of their termination pursuant to the Wage Act.

32.     As a result of Defendants' violations of the WARN Act, the Class Members were injured by Defendants' failure to provide at least sixty (60) days' notice to them before Defendants' closing and/or conducting a mass layoff.

33.     As a result of Defendants' violations of the Wage Act, the Class Members were not timely paid all earned wages owed by Defendants within the deadlines set forth in the Wage Act.

34.     The relevant time period for the claims of the Class Members is three (3) years preceding the date this civil action was filed and forward.

35.     MMI was a domestic profit corporation duly incorporated under the laws of the Commonwealth with a principal place of business at 557 Highland Avenue, Needham, Norfolk County, Massachusetts 02494.

36.     During all relevant times to this civil action until MMI voluntarily dissolved on or about December 28, 2021, MMI transacted business in the Commonwealth.

37.     Though dissolved, MMI is still subject to suit pursuant to Mass. Gen. Laws ch. 156D, § 14.09.

38.     MMI operated retail vehicle dealerships in the Commonwealth at which Defendants' employees sell vehicles, automobile financial products, and services to customers.

39.     Mr. N. Cammarano is an adult natural person who resides in Arlington, Massachusetts and transacts business in Needham, Massachusetts.

40.     During all relevant times to this civil action, Mr. N. Cammarano was the President, CEO, and a Director of MMI.

41.     Mr. G. Cammarano is an adult natural person who resides in Foxborough, Massachusetts and transacts business in Needham, Massachusetts.

42.     During all relevant times to this civil action, Mr. G. Cammarano was the Treasurer, CFO, and a Director of MMI.

43.     Ms. Sinesi is an adult natural person who resides in Natick, Massachusetts and transacts business in Needham, Massachusetts.

44.     During all times relevant to this civil action, Ms. Sinesi was the Treasurer and a Director of and an officer or agent who had the management of MMI.

## JURISDICTION AND VENUE

45.     Pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5), this Court has federal question jurisdiction over Plaintiffs' WARN Act claim.

46.     Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiffs' Wage Act and UFTA claims because they are so related to their WARN Act claim that it forms part of the same case or controversy under Article III of the United States Constitution.

47.     Pursuant to 28 U.S.C. § 1391, venue is Proper in this Court because (i) Defendants are domiciled in the Commonwealth, which is within this District, and (ii) a substantial portion of the acts or omissions giving rise to Plaintiffs' WARN Act, Wage Act, and UFTA claims occurred in Norfolk County, Massachusetts, which is within this District.

48.     The Massachusetts Attorney General, in writing, granted Plaintiffs the right to bring this private civil action for their Wage Act claim on behalf of themselves and all others similarly situated.

## WARN ACT FACTUAL ALLEGATIONS

49.     Plaintiffs incorporate by reference each and every preceding paragraph as if fully restated herein.

50.     For over nine (9) decades, Defendants provided automobile sales and related services to its customers.

51.     MMI operated two (2) dealerships at its Needham, Massachusetts headquarters – a Ford dealership and a Chevrolet dealership – until on or about November 30, 2021.

52.     Essential functions of each of MMI's Ford and Chevrolet dealerships included, but were not limited to inventory, sales, pricing, stocking, re-stocking, scheduling, product offerings, automobile body shop offerings, and personnel matters were centralized through MMI's headquarters and staffed and managed across the Ford and Chevrolet dealerships as a single entity.

53.     All essential decisions regarding these functions were made for each of MMI's Ford and Chevrolet dealerships by the same centralized managers.

54.     While each of MMI's Ford and Chevrolet dealerships had its own manager, these managers were not responsible for purchasing inventory, equipment, or supplies; were not involved with finances, vendor accounts, or leases; and did not directly hire, manage, or terminate MMI's employees working at its Ford and Chevrolet dealerships.

55.     Staffing, inventory, and offerings were managed across MMI's Ford and Chevrolet dealerships as a single entity by centralized management.

56.     Employment handbooks, employment benefit programs, marketing materials, and other content were created by centralized management at MMI's headquarters and disseminated and utilized across its Ford and Chevrolet dealerships.

57.     All employee scheduling, timekeeping, payment of wages, management of employee benefits, hiring/firing and management of business operations were managed and/or controlled by centralized management at MMI's headquarters, not at the Ford and Chevrolet dealerships.

58.     To wit: all payroll functions were performed through MMI's headquarters.

59.     To wit: all finances, sales, and pricing were determined by MMI for the Ford and Chevrolet dealerships.

60.     To wit: all retail and service products were selected, purchased, and priced for sale by MMI's headquarters for its Ford and Chevrolet Dealerships.

61.     MMI's Ford and Chevrolet dealerships together operated as a "single site of employment" as that term is used in 29 U.S.C. § 2101(a)(2)-(3) and regulations promulgated thereunder, including 20 C.F.R. § 639.3(i)(3).

62.     On or around the time Defendants caused a closing and/or mass layoff, Defendants' employed over one hundred (100) employees at their Ford and Chevrolet dealerships.

63.     On or around the time of the closing and/or mass layoff and within the sixty (60) days prior, Defendants employed more than one hundred employees other than part-time employees or more than one hundred (100) employees who, in the aggregate, worked at least four thousand (4,000) hours per week as defined in the WARN Act.

64.     Defendants' closing and/or mass layoff caused employment loss to Plaintiffs and Class Members during the preceding thirty (30) day period of at least thirty-three (33%) of Defendants' employees and fifty (50) employees, other than part-time workers.

65.     Leading up to and related to the causes of Defendants' closing and/or mass layoff, Defendants terminated additional employees within ninety (90) days of the closing and/or mass layoff, which terminations, in the aggregate, resulted in the loss of employment at the Ford and Chevrolet dealerships of at least thirty-three (33%) of Defendants' employees and fifty (50) employees, other than part-time employees.

66.     Defendants caused a "plant closing" and/or "mass layoff" within the meaning of 29 U.S.C. § 2101(a)(2)-(3).

## WAGE ACT FACTUAL ALLEGATIONS

67.     Plaintiffs incorporate by reference each and every preceding paragraph as if fully restated herein.

68.     Plaintiffs and Class Members are former employees of Defendants.

69.     Plaintiffs and Class Members' primary job duties consisted of generating sales leads for automobiles and selling automobiles to customers, selling automobile financial products to customers, managing automobile dealerships, managing automobile body shops, and/or managing the automobile dealerships' QuickLane.

70.     During all times relevant to this civil action, Defendants operated retail vehicle dealerships and automobile body shops in the Commonwealth at which Plaintiffs and Class Members worked.

71.     Plaintiffs and Class Members were eligible to earn PTO under Defendants' Paid Time Off Policy ("PTO Policy").

72.     Defendants' PTO Policy provides how Plaintiffs and Class Members earned PTO.

73.     For example, for Defendants' employees who were hired on or after August 1, 2003, (i) for Defendants' employees' first year of employment, they would earn one (1) day

of PTO per calendar month after a ninety (90) day introductory period; (ii) for Defendants'
employees' second through fourth years of employment, they would earn one (1) day of
PTO per calendar month up to twelve (12) days; (iii) for Defendants' employees' fifth
through ninth years of employment, they would earn one and twenty-five hundredths (1.25)
days of PTO per calendar month up to fifteen (15) days; and for Defendants' employees'
tenth year of employment and beyond, they would earn one and five-tenths (1.45) days of
PTO per calendar month up to eighteen (18) days.

74.     For example, for Defendants' employees who were hired before August 1,
2003, (i) for Defendants' employees' first year of employment, they would earn one (1) day
of PTO per calendar month after a ninety (90) day introductory period; (ii) for Defendants'
employees' second through ninth years of employment, they would earn one and five-tenths
(1.5) days of PTO per calendar month up to eighteen (18) days; and for Defendants'
employees' tenth year of employment and beyond, they would earn two (2) days of PTO per
calendar month up to twenty-four (24) days.

75.     Defendants' PTO Policy defined Defendants' employees' first year of
employment for PTO purposes as running for the first twelve (12) months of employment.

76.     Defendants' PTO Policy defined Defendants' employees' second year of
employment for PTO purposes as beginning the next day after the first twelve (12) months
of employment running to December 31 thereafter.

77.     Defendants' PTO Policy defined any following PTO years for Defendants'
employees as running from January 1st through December 31st.

78.     Defendants' PTO Policy was designed for Defendants' employees to take
PTO in the same year in which the PTO was earned.

79.     Defendants' PTO Policy provided for Defendants' employees to be paid unused PTO earned in a calendar year on December 31st.

80.     Defendants' PTO Policy also provided for Defendants' employees to be paid earned and unused PTO upon termination of their employment.

81.     Under Defendants' PTO Policy, Plaintiffs and Class Members earned PTO in calendar year 2021.

82.     Defendants terminated Plaintiffs and Class Members on various days throughout late calendar year 2021.

83.     Defendants did not pay Plaintiffs and Class Members the full amount of their earned PTO when they were terminated.

84.     Plaintiffs and Class Members are employees of Defendants under the Wage Act.

85.     Defendants were employers of Plaintiffs and Class Members under the Wage Act.

86.     When Plaintiffs and Class Members earned PTO, they were entitled to receive the full amount of their earned PTO on the dates of their termination.

87.     Due to the demands of their jobs, Plaintiffs and Class Members routinely earned PTO.

88.     Defendants had a practice and policy to not pay Plaintiffs and Class Members the full amount of their earned PTO on the dates of their terminations, regardless of whether they had earned PTO on the dates of their termination.

89.     In other words, Defendants failed to pay Plaintiffs and Class Members the full amount of their earned PTO on the dates of their termination.

90. Defendants' failure to pay *all* earned PTO owed to Plaintiff and Class Members pursuant to the Wage Act in the timelines required by the Wage Act resulted in Defendants also violating the Wage Act.

91. Defendants had notice of potential liability for unpaid earned PTO throughout the relevant time period pertaining to this civil action.

92. Defendants' management had knowledge of the obligation to pay all earned PTO to Plaintiffs and Class Members on the dates of their termination.

93. Defendants' management also had knowledge that Plaintiffs and Class Members regularly earned PTO and were not paid the full amount of their earned PTO on the dates of their termination, such knowledge accordingly is imputed to Defendants.

94. Defendants' management knew or had reason to believe that Plaintiffs and Class Members were earning PTO, were owed all earned PTO on the dates of their termination, and such earned PTO was not reported to payroll.

95. Plaintiffs worked with numerous other Class Member employees of Defendants at their locations in the Commonwealth.

96. Like Plaintiffs, these employees, before, during, and after Plaintiffs' dates of employment routinely earned PTO, are/were entitled to be paid the full amount of their earned PTO on the dates of their termination, and did not/do not receive all earned PTO owed by Defendants as required by the Wage Act resulting in violations of the Wage Act for the same reasons as Plaintiffs.

97. On information and belief, Defendants employed employees at/from/through those retail vehicle dealerships in the Commonwealth who are similarly situated to Plaintiffs and who, despite being entitled to be paid the full amount of their earned PTO on the dates

of their termination as Wage Act employees, were not paid all earned PTO owed on the dates of their termination due to Defendants' failure to compensate them for all earned PTO on the dates of their termination as required by the Wage Act.

### UFTA FACTUAL ALLEGATIONS

98.     Plaintiffs incorporate by reference each and every preceding paragraph as if fully restated herein.

99.     Throughout September, October, and November 2021, Plaintiffs and Class Members repeatedly asked Defendants whether Defendants were closing, going to conduct a mass layoff, and also asked Defendants if they would be paid the full amount of their earned PTO in the event Defendants closed and/or conducted a mass layoff resulting in their termination.

100.    Defendants repeatedly and intentionally misled Plaintiffs and Class Members when they assured Plaintiffs and Class Members that there would be no closing and/or mass layoffs.

101.    Defendants knew or should have known that they were going to close and/or conduct a mass layoff because the land on which MMI operated was negotiated to be sold and was sold by JMALP LLC to 557 Highland LLC on December 17, 2021.

102.    Messrs. Cammarano and Ms. Sinesi were JMALP LLC's persons authorized to execute, acknowledge, deliver, and records any recordable instrument purporting to affect an interest in real property.

103.    Messrs. Cammarano and Ms. Sinesi began considering selling the land on which MMI operated at some point in 2018 – after Frank Muzi passed away.

104.    Messrs. Cammarano and Ms. Sinesi consideration of selling the land on which MMI operated intensified after zoning changes to the land were made in 2021 that updated allowable uses for the land.

105.    On or around the time of Defendants' closing and/or mass layoff, they were aware of Plaintiffs and Class Members intent to file a civil action against them for violations of the WARN Act and Wage Act and were aware of their obligations to Plaintiffs and Class Members under the WARN Act and Wage Act.

106.    Contrary to what Defendants told Plaintiffs and Class Members, Defendants did intend to close and/or conduct a mass layoff without providing proper notice under the WARN Act and Defendants also conspired to intentionally not pay Plaintiffs and Class Members the full amount of their earned PTO on the dates of their termination.

107.    Contrary to what Defendants told Plaintiffs, they did in fact close and/or conduct a mass layoff and did not pay Plaintiffs and Class Members the full amount of their earned PTO on the dates of their termination.

108.    Moreover, in or around this same time, MMI transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi – MMI's officers and directors.

109.    MMI transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi to hinder, delay, and/or defraud Plaintiffs and Class Members in connection with their claims under the WARN Act and Wage Act.

110.    MMI transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi without receiving anything in return.

111.     MMI transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi such that its remaining assets – *i.e.*, none – were unreasonably small in relation to its liquidation.

112.     MMI transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi in exchange for nothing and MMI became insolvent as a result of such transfer.

113.     MMI transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi, its officers and directors, when it knew or should have known of Plaintiffs and Class Members' claims under the WARN Act and Wage Act, it was insolvent at that time because it was liquidating all of its assets, and Messrs. Cammarano and Ms. Sinesi had reasonable cause to believe that MMI was insolvent because it was liquidating all of its assets.

## CLASS ACTION ALLEGATIONS

114.     Plaintiffs incorporate by reference each and every preceding paragraph as if fully restated herein.

115.     Plaintiffs brings their WARN Act, Wage Act, and UFTA claims as a class action under R23.

116.     Plaintiffs seek to represent a class initially defined as:

> All employees who worked for Defendants in the Commonwealth who were (i) not provided at least sixty (60) days' advance notice to Plaintiffs and Class Members before Defendants' closing and/or conducting a mass layoff pursuant to the WARN Act, (ii) not paid all earned PTO required by the Wage Act resulting in lost wages not paid within the deadlines set forth in the Wage Act, and (iii) injured by Defendants violations of the UFTA.

117.     Plaintiffs request the opportunity to expand, narrow, or modify the class definition pursuant to a motion for class certification and/or amended pleading to the extent discovery reveals that the class definition should be modified.

118.     Plaintiffs' claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action.

119.     Upon information and belief, there are over fifty (50) Class Members and joinder is therefore impracticable.  The precise number of Class Members and their addresses are readily determinable from Defendants' records.

120.     There are common questions of fact and law as to the class that predominate over any questions arising from Defendants' actions/omissions, including but not limited to the following:

   a.   Whether Defendants provided at least sixty (60) days' advance notice to Class Members before Defendants' closing and/or conducting a mass layoff pursuant to the WARN Act;

   b.   Whether Defendants paid all earned PTO owed to the Class Members as required by the Wage Act;

   c.   Whether Defendants' pay practices as to the Class Members violated the Wage Act;

   d.   Whether Defendant' transfers were fraudulent in violation of the UFTA;

   e.   The appropriate method to calculate damages under the WARN Act for the Class Members;

   f.   The appropriate method to calculate damages under the Wage Act for the Class Members; and

g.  The appropriate method to remedy Class Members for Defendants'
violations of the UFTA.

121.    The questions above predominate over any questions affecting only individual persons and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the WARN Act, Wage Act, and UFTA claims.

122.    A class action is the superior method for the fair and efficient adjudication of this controversy.  Defendants have acted or refused to act on grounds generally applicable to the class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests.

123.    Plaintiffs are affected former employees of Defendants who were (i) not provided at least sixty (60) days' advance notice before Defendants' closing and/or conducting a mass layoff pursuant to the WARN Act, (ii) not paid all earned PTO as required by the Wage Act within the deadlines set forth in the Wage Act resulting in lost wages not paid within the deadlines set forth in the Wage Act, and (iii) injured by Defendants' fraudulent transfers in violation of the UFTA.  Plaintiffs are, therefore, members of the putative class.

124.    Plaintiffs are committed to pursuing this action and have retained counsel experienced in prosecuting complex wage, employment, UFTA, and class action litigation. Accordingly, Plaintiffs are adequate representatives of the putative class and have the same interest as the Class Members.  Further, Plaintiffs' claims are typical of the claims of the

Class Members and Plaintiffs will fairly and adequately protect the interests of the absent Class Members of the putative class.  Plaintiffs and their counsel do not have claims or interests that are adverse to the Class Members.

**FIRST CAUSE OF ACTION**
**Violations of the WARN Act**
**(Plaintiffs, on behalf of Themselves and All Others Similarly Situated, against All Defendants)**

125.    Plaintiffs incorporate by reference each and every preceding paragraph as if fully restated herein.

126.    On or around the time Defendants caused a closing and/or mass layoff, Defendants' employed over one hundred (100) employees at their Ford and Chevrolet dealerships.

127.    On or around the time of the closing and/or mass layoff and within the sixty (60) days prior, Defendants employed more than one hundred employees other than part-time employees or more than one hundred (100) employees who, in the aggregate, worked at least four thousand (4,000) hours per week as defined in the WARN Act.

128.    Defendants caused a closing and/or mass layoff terminating Plaintiffs and Class Members without notice as required by the WARN Act.

129.    As a result, Plaintiffs and Class Members suffered an employment loss as a result of the closing and/or mass layoff.

130.    Plaintiffs and Class Members seek all damages available for Defendants' violations of the WARN Act.

## SECOND CAUSE OF ACTION
### Violations of the Wage Act
**(Plaintiffs, on behalf of Themselves and All Others Similarly Situated, against All Defendants)**

131.    Plaintiffs incorporate by reference each and every preceding paragraph as if fully restated herein.

132.    Employers in the Commonwealth are generally required to pay employees earned PTO wages on the dates of their discharge. *See* G.L. c. 149, § 148 ("Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six [(6)] days of the termination of the pay period during which the wages were earned if employed for five [(5)] or six [(6)] days in a calendar week, or to within seven [(7)] days of the termination of the pay period during which the wages were earned if such employee is employed seven [(7)] days in a calendar week,… and *any employee discharged from such employment shall be paid in full on the day of his discharge* (emphasis added)[.]").

133.    "The word 'wages' shall include any holiday or vacation payments due an employee under an oral or written agreement." *Id.*

134.    "An employee so aggrieved who prevails [pursuant to Mass. Gen. Laws ch. 149, § 148] shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees." G.L. c. 149, § 150.

135.    At all relevant times to this civil action, Defendants were an eligible covered employer of Plaintiffs and Class Members under the Wage Act.

136.    At all relevant times to this civil action, Plaintiffs and Class Members were employees of Defendants under the Wage Act.

137.     Plaintiffs and Class Members regularly earned PTO under Defendants' PTO Policy.

138.     Defendants were required to pay Plaintiffs and Class Members the full amount of their earned PTO on the dates of their termination.

139.     Defendants failed to pay Plaintiffs and Class Members earned PTO on the dates of their termination during the time period relevant to this civil action.

140.     By failing to timely pay all earned PTO owed to Plaintiffs and Class Members pursuant to the Wage Act within the deadlines required by the Wage Act, Defendants also violated the Wage Act as to Plaintiffs and Class Members.

141.     Defendants' violations of the Wage Act were willful.  At all relevant times to this civil action, Defendants were aware that Plaintiffs and Class Members were not paid all earned PTO on the dates of their termination as required by the Wage Act and were not timely paid all earned PTO owed as required by the Wage Act.

142.     Plaintiffs and Class Members specifically plead recovery for the time period of three (3) years preceding the date this civil action was filed and forward for their Wage Act claim.

143.     Plaintiffs filed their complaints with the Attorney General pursuant to Mass. Gen. Laws ch. 149, § 150.

144.     The Office of the Attorney General issued Plaintiffs "private right of action" letters authorizing a civil lawsuit in this matter on their own behalf and on behalf of those similarly situated pursuant to Mass. Gen. Laws ch. 149, § 150.

145.     Plaintiffs and Class Members seek all damages available for Defendants' violations of the Wage Act.

## THIRD CAUSE OF ACTION
### Violations of the UFTA
### (Plaintiffs, on behalf of Themselves and All Others Similarly Situated, against All Defendants)

146.    Plaintiffs incorporate by reference each and every preceding paragraph as if fully restated herein.

147.    "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the claim arose before or after the transfer was made or obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (i) was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction[.]"  G.L. c. 109A, § 5(a).

148.    "In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider;… (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets;… (7) the debtor removed or concealed assets;… [and] (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred[.]"  G.L. c. 109A, §5(b)(1), (4), (5), (7), (9).

149.    "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at

that time or the debtor became insolvent as a result of the transfer or obligation." G.L. c. 109A, § 6(a).

150.    Plaintiffs and Class Members are/were creditors under the UFTA.

151.    MMI is/was a debtor under the UFTA.

152.    Messrs. Cammarano and Ms. Sinesi are/were insiders under the UFTA.

153.    MMI transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi with actual intent to hinder, delay, and/or defraud Plaintiffs and Class Members because such transfers were made to Messrs. Cammarano and Ms. Sinesi – its insiders.

154.    MMI transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi with actual intent to hinder, delay, and/or defraud Plaintiffs and class Members because, before such transfers were made, Plaintiffs and Class Members had sued MMI or threatened MMI with suit.

155.    MMI transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi with actual intent to hinder, delay, and/or defraud Plaintiffs and Class Members because such transfer consisted of all of the monies MMI possessed after MMI's assets were liquidated.

156.    MMI transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi with actual intent to hinder, delay, and or defraud Plaintiffs and Class Members because MMI removed or concealed all of its assets via liquidation of all of its assets and transfer of the liquidation's proceeds to Messrs. Cammarano and Ms. Sinesi.

157.    MMI transferred proceeds from the liquidation of its assets to Messrs Cammarano and Ms. Sinesi with actual intent to hinder, delay, and/or defraud Plaintiffs and

Class Members because MMI was insolvent and/or became insolvent shortly after such transfers were made because the transferred proceeds arose from the liquidation of all of its assets.

158.    MMI fraudulently transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi as to Plaintiffs and Class Members because it received nothing in exchange for the transfer and it engaged in a transaction for which the remaining assets of the debtor were unreasonably small in relation to the transaction, *i.e.*, MMI's transfer of proceeds from its liquidation to Messrs. Cammarano and Ms. Sinesi left it with nothing.

159.    MMI fraudulently transferred proceeds from the liquidation of its assets to Messrs. Cammarano and Ms. Sinesi as to Plaintiffs and Class Members because such transfers were made without receiving a reasonably equivalent value, *i.e.*, Messrs. Cammarano and Ms. Sinesi gave it nothing, and MMI was insolvent at that time and/or became insolvent as a result of such transfers, *i.e.*, MMI was left with nothing.

160.    All such aforementioned transfers from MMI to Messrs. Cammarano and Ms. Sinesi were fraudulent as to Plaintiffs and Class Members, *i.e.*, such transfers were violations of the UFTA.

161.    Plaintiffs and Class Members seek all remedies available for Defendants' violations of the UFTA pursuant to Mass. Gen. Laws ch. 109A, § 8.

## JURY DEMAND

162.    Plaintiffs request a trial by jury with respect to all claims so triable.

## DAMAGES AND PRAYER

163.    Plaintiffs, on behalf of themselves and all others similarly situated, pray for the following relief as against Defendants:

a. An order certifying the WARN Act, Wage Act, and UFTA claims as a R23 class action and naming Richardson & Cumbo, LLP as class counsel;

b. Appointment of Plaintiffs as class representatives for the class;

c. All damages allowed by the WARN Act, including sixty (60) days back wages and benefits, on a class wide basis and attorneys' fees;

d. All damages allowed by the Wage Act, including back wages; treble damages, as liquidated damages, on a class wide basis pursuant to Commonwealth law; attorneys' fees; and costs;

e. All remedies allowed by the UFTA, including avoidance of such transfers to the extent necessary to satisfy Plaintiffs and Class Members' WARN Act and Wage Act claims; an attachment or other provisional remedy against the assets transferred or other property of MMI in accordance with the applicable procedure set forth in Mass. Gen. Laws ch. 214, Mass. Gen. Laws ch. 223, and Mass. Gen. Laws ch. 246; an injunction against further disposition by Defendants of the assets transferred or of other property; appointment of a receiver to take charge of the assets transferred or of other property of MMI; or any other relief the circumstances may require;

f. Pre-judgment interest on Plaintiffs and Class Members' WARN Act and Wage Act damages;

g. Post-judgment interest on Plaintiffs and Class Members WARN Act and Wage Act damages; and

h. All other relief to which Plaintiffs and Class Members are entitled.

Respectfully submitted,

Plaintiffs,

SCOTT BROCKLESBY, JUSTIN
MAHARATH, JAMES JUBB, SCOTT
FREDERICK, ROBERT FARROW, DONNA
DIVENUTI, DAVID PASTERNAK,
ANTHONY MASONE, SCOT RODMAN,
TIMOTHY DUFFY, and VADIM
IABLONOVSKI, on behalf of themselves and all
others similarly situated,

By their attorneys,

Edward C. Cumbo (BBO # 661284)
 e.cumbo@rc-llp.com
Robert Richardson (BBO # 676947)
 r.richardson@rc-llp.com
RICHARDSON & CUMBO, LLP
101 Federal Street, Suite 1900
Boston, MA 02110
Tel: (617)217-2779

DATED: March 12, 2022